United States District Court
Southern District of Texas
**ENTERED**
August 24, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| JOSEPH FRANK HOMER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:21-CV-00057 |
| | § | |
| KILOLO KIJAKAZI, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Joseph Frank Homer filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("the Commissioner") to deny his application for Social Security disability benefits. Now pending are Homer's and the Commissioner's construed cross-motions for summary judgment. (D.E. 13, 14). Homer contends that the residual functional capacity ("RFC") determination made by the Administrative Law Judge ("ALJ") is not supported by substantial evidence because he failed to properly define the language in the included limitations related to his restroom use. For the reasons discussed further below, it is respectfully recommended that Homer's motion (D.E. 13) be **GRANTED**, the Commissioner's motion (D.E. 14) be **DENIED**, and the Commissioner's denial of disability benefits be **REVERSED AND REMANDED** for further consideration.

## I.   BACKGROUND & ADMINISTRATIVE RECORD

### a.  *Application, Medical Records, and Hearing*

In September 2019, Homer filed an application for disability insurance benefits, alleging a disability commencing on February 1, 2017. (D.E. 11-7 at 11). Homer claimed that his post-traumatic stress disorder ("PTSD"), urethral strictures with urethritis, and diabetes limited his ability to work. (D.E. 11-8 at 3). The Commissioner denied Homer's application both initially and on reconsideration. (D.E. 11-4 at 9, 18).

The medical records indicate that Homer has long had urinary difficulties including a high voiding pressure, decreased bladder compliance, and high post-void residual. (*See, e.g.,* D.E. 11-10 at 22, 31, 35; D.E. 11-14 at 72-83, 87-95). It is unnecessary to summarize the medical records in more detail because the parties agree that Homer has a severe bladder issue that requires immediate proximity to a toilet and the ability to void more frequently than once per hour. (*See* D.E. 14 at 4).

At a hearing before the ALJ on August 27, 2020, Homer testified to the following. (D.E. 11-3 at 33). He had urinary issues for 20 or 30 years, but they had gotten worse over time. (*Id.* at 49). He had to use the restroom about every 35 minutes even if he limited his fluid intake. (*Id.* at 50). He wore pads to help with leakage but had to change them four or five times a day. (*Id.* at 57). Most of his day required planning around his bladder issues. (*Id.* at 58-59).

A vocational expert identified Homer's past relevant work as a high voltage electrical lineman and distribution technician. (*Id.* at 40, 45). The ALJ asked the vocational expert whether a person the same age, education, and work experience could

perform Homer's past work if he also: (1) could perform medium work; (2) could have exposure to moderate noise and vibration; and (3) could occasionally interact with supervisors, coworkers, and the general public. (*Id.* at 61). The vocational expert responded that the hypothetical individual could perform the job of distribution technician. (*Id.*). If the individual had the additional restriction of needing ready access to a restroom, that would preclude Homer's past employment. (*Id.* at 61-62). However, the vocational expert testified that such an individual could perform jobs such as laundry worker, hand packager, or retail stocker. (*Id.* at 62). These jobs usually had restrooms within the facility that someone could get to in a short period of time. (*Id.* at 63). If the individual had the additional restriction of only being able to understand, remember, and carry out detailed, but not complex instructions and could not work in a fast-paced production environment, they would still be able to perform those jobs. However, if the individual would be off-task more than 20% of the workday, miss more than two days of work per month, or require two more additional breaks between 15 minutes each, they would not be able to find employment. (*Id.*).

The vocational expert further testified that the requirement of ready access to a restroom was not addressed in the Dictionary of Occupational Titles, but he relied on his 40 years of experience when considering that restriction. (*Id.*). If someone had to use the restroom for more than 20% of the time in their job, they would not be employable. (*Id.* at 64).

3

*b. ALJ Decision*

On September 9, 2020, the ALJ issued an opinion concluding that Homer was not under a disability since February 1, 2017. (D.E. 11-3 at 14-27). At the first step of the sequential evaluation process, the ALJ concluded that Homer had not engaged in substantial gainful activity since February 1, 2017. (*Id.* at 16). At the second step, the ALJ concluded that Homer had several severe impairments that limited his ability to perform basic work activities, including (1) obesity; (2) urethral strictures with urethritis; (3) asymmetrical sensorineural hearing loss; (4) tinnitus; (5) diabetes mellitus; (6) PTSD; and (7) anxiety disorder. (*Id.* at 17).

At the third step, the ALJ concluded that Homer did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 18). The ALJ concluded that Homer had the residual functional capacity to perform medium work, with the following additional limitations:

> [H]e can lift or carry 50 pounds occasionally and 25 pounds frequently; he can stand or walk for 6 hours in an 8 hour day; he can sit for 6 hours in an 8 hour day; he requires ready access to a restroom, such as that provided by an office environment; he can be exposed to moderate levels of noise or vibrations; he can understand, remember, and carry out detailed but not complex instructions, not performed in a fast-paced production environment, and he is limited to occasional interaction with supervisors, coworkers, and the general public.

(*Id.* at 19). The ALJ acknowledged that Homer "need[s] to use the restroom at least once an hour." (*Id.* at 21, 23-25).

At step four, the ALJ concluded that, based on his RFC, Homer was unable to perform his past relevant work as a high voltage electrical lineman and distribution technician. (*Id.* at 25). However, at step five, the ALJ concluded that, based on his RFC, age, education, and work experience, there were jobs that existed in significant numbers in the national economy that Homer could perform. (*Id.* at 25-26). The ALJ stated that, in accordance with the vocational expert's testimony, Homer would be able to perform the requirements of occupations such as laundry worker, hand packager, and retail stocker. (*Id.* at 26). Thus, the ALJ concluded that Homer was not under a disability since February 1, 2017. (*Id.* at 27).

The Appeals Council denied Homer's request for review of the ALJ's decision. (*Id.* at 2-4).

## II. DISCUSSION

In his motion for summary judgment, Homer contends that the ALJ's finding of not-disabled is not supported by substantial evidence because the wording related to his necessary bathroom breaks in the hypothetical asked of the vocational expert and the RFC determination is vague and unclear. (D.E. 13 at 9-10). Specifically, he argues that the language requiring "ready access to a restroom, such as that provided by an office environment," does not define what "ready access" or "office environment" mean. (*Id.* at 10-11). Homer contends that the ALJ at least needed to specify the duration and frequency of the restroom breaks and what distance qualifies as "ready access." (*Id.* at 11-12).

The Commissioner responds that the ALJ's question to the vocational expert, and the final RFC that was the same, was sufficiently detailed for the vocational expert's

5

testimony to qualify as substantial evidence to support the conclusion that Homer could find other jobs.  (D.E. 14 at 5-6).

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  The burden has been described as more than a scintilla, but lower than a preponderance.  *Id.*

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether: (1) the claimant is participating in substantial gainful activity; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform other relevant work.  *Martinez*, 64 F.3d at 173-174; 20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof on the first four steps, with the burden shifting to the Commissioner at the fifth step.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

RFC, which is determined between the third and fourth steps, is the most a claimant can do despite their limitations.  20 C.F.R. § 404.1545(a); *Perez*, 415 F.3d at 461-62.  When assessing a claimant's RFC, the ALJ must consider all relevant medical and other evidence, including statements by the claimant and their family members regarding the limitations

6

that result from their symptoms. 20 C.F.R. § 404.1545(a)(3). "[T]he determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).

When determining whether a claimant can perform other relevant work at step five, an ALJ may rely upon a vocational expert's testimony, provided that the record reflects an adequate basis for doing so. *Carey v. Apfel*, 230 F.3d 131, 145-47 (5th Cir. 2000). The issue at step five is whether the ALJ's hypothetical question to the vocational expert reasonably incorporates the disabilities recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A determination of non-disability based on a defective question cannot stand. *Id.* A hypothetical asked of a vocational expert is defective unless: (1) it reasonably incorporates all the disabilities recognized by the ALJ; and (2) the claimant was given the opportunity to correct deficiencies in the ALJ's question. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling*, 36 F.3d at 437. If the first prong is not satisfied, the second prong need not be addressed. *See Brown v. Barnhart*, 285 F. Supp. 2d 919, 933 (S.D. Tex. 2003) (citing *Boyd*, 239 F.3d at 707). "A vocational expert is called to testify because of his familiarity with job requirements and working conditions" and may rely on his expertise to rely on the conclusions given to the ALJ. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

Here, the ALJ's determination at step five that Homer could find other work was not supported by substantial evidence because the RFC determination and hypothetical asked of the vocational expert did not reasonably incorporate Homer's urinary disability. The ALJ's hypothetical to the vocational expert and RFC determination require "ready

7

access to a restroom," but do not define other important issues related to regular use of the restroom, including the frequency and duration of restroom breaks. (D.E. 11-3 at 19, 61-62). While the Commissioner contends that the vocational expert relied on his expertise to determine that Homer could find other work, the vocational expert is limited by the hypothetical provided by the ALJ. Vocational experts are qualified to testify regarding job requirements and working conditions, they are not able to testify regarding the claimant's medical needs or RFC, which are the ALJ's responsibility. *Vaughan*, 58 F.3d at 132; *Taylor*, 706 F.3d at 602-03. The vocational expert's experience in job requirements and working conditions do not provide a basis for which he could know what is meant by "ready access to a bathroom" or, more importantly, how much of the workday Homer would be off-task as a result of his needing to use the restroom.

The parties agree that Homer must use the restroom at least once every hour, which would be at least eight times per workday. (*See* D.E. 14 at 4). Homer testified that he must use the restroom every 35 minutes and needs to change pads four to five times per day due to leakage. (D.E. 11-3 at 50, 57). As several other courts in this district have concluded, in order for the vocational expert to give reliable testimony regarding whether Homer can work, the ALJ must quantify how often these restroom breaks would require Homer to be off-task. *See Dickerson v. Comm'r of Soc. Sec.*, No. 4:18-CV-4578, 2019 WL 7938518, at *4 (S.D. Tex. Dec. 9, 2019), *report and recommendation adopted sub nom. Dickerson v. Comissioner of Soc. Sec.*, No. 4:18-CV-4578, 2020 WL 730877 (S.D. Tex. Feb. 12, 2020); *Giddens v. Kijakazi*, No. 4:20-CV-2559, 2022 WL 463831, at *4 (S.D. Tex. Feb. 15, 2022).

The existing testimony already establishes that, were it to reach 20% of the workday, Homer would not be able to find employment. (D.E. 11-3 at 63).

### III. RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Homer's motion (D.E. 13) be **GRANTED**, the Commissioner's motion (D.E. 14) be **DENIED**, and the Commissioner's denial of disability benefits be **REVERSED AND REMANDED** for further consideration.

Respectfully submitted on August 24, 2022.

_____
Julie K. Hampton
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).